IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

MOBILE BAYKEEPER, INC.                    )
                                          )
                Plaintiff,                )
                                          )
        v.                                )   Civil Case No. 1:14-cv-00032
                                          )
U.S. ARMY CORPS OF ENGINEERS;             )   COMPLAINT FOR
LT. GENERAL THOMAS P. BOSTICK,            )   DECLARATORY AND
U.S. Army Corps of Engineers;             )   INJUNCTIVE RELIEF
COL. JON J. CHYTKA, U.S. Army Corps       )
of Engineers, Mobile District,            )
                                          )
                                          )
                Defendants.               )
                                          )
_____       )

## INTRODUCTION

1.      This action is an as-applied challenge to the U.S. Army Corps of

Engineers' (the "Corps") decision to issue verifications, under Nationwide Permit

("NWP") 12, that allow the construction of a crude oil pipeline ("Pipeline") in the

drinking water supply watershed for the City of Mobile and surrounding areas.

NWP 12 authorizes the construction, maintenance, repair and removal of utility

lines, which includes pipes or pipelines, in waters of the United States under

certain conditions.

2.     Plains Southcap, L.L.C. ("Plains") has proposed, and begun to build, a 41-mile-long crude oil Pipeline that would run from Ten-Mile Terminal, a crude oil storage facility in Mobile County, Alabama to the Chevron Pascagoula Refinery in Pascagoula, Mississippi.  A portion of this Pipeline is routed through the Big Creek Lake (a.k.a.  J.B. Converse Lake) – Hamilton Creek watershed in Mobile County.  Big Creek Lake is the primary drinking water supply for the majority of Mobile County, and Hamilton Creek is a major tributary which flows into Big Creek Lake.  Big Creek Lake supplies water for the Cities of Mobile, Prichard, Semmes, Saraland, Chickasaw and Spanish Fort, as well as numerous other municipalities.  More than 200,000 residential, business and industrial customers rely on this water supply.

3.     By allowing the use of NWP 12 for this Pipeline, as opposed to requiring Plains to apply for an individual permit, Defendants have violated the procedural and substantive requirements of § 404 of the Clean Water Act ("CWA"), 33 U.S.C. § 1344, and its implementing regulations.  The Defendants have also violated the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701–706, by acting arbitrarily and capriciously, abusing their discretion and acting contrary to law.  Plaintiff asks the court to (1) declare that Defendants have violated the statutory and regulatory duties described in this Complaint; (2) enjoin the construction and operation of the Pipeline, unless and until Defendants comply

fully with the Clean Water Act and the Administrative Procedure Act; and (3)

award to Plaintiff its costs and expenses, including reasonable attorney and expert

witness fees.

## JURISDICTION

4.      This action arises under the Clean Water Act, 33 U.S.C. § 1344.  The

Court has subject matter jurisdiction under 28 U.S.C. § 1331, and may issue

declaratory and further relief under 28 U.S.C. §§ 2201 and 2202.  Plaintiff is

entitled to bring this action under the Administrative Procedure Act, 5 U.S.C. §§

701–706.

## VENUE

5.      Venue is appropriate in this judicial district under 28 U.S.C. § 1391(e)

because the activities at issue are located in this judicial district.

## PARTIES

### Plaintiff

6.      Plaintiff Mobile Baykeeper, Inc. ("Baykeeper") is a non-profit

corporation with over 4,000 members whose mission is to provide citizens a means

to protect the beauty, health and heritage of the Mobile Bay Watershed, Alabama's

waterways and coastal communities.  Baykeeper works on issues that affect the

quality of the water, air and public health.  Much of Baykeeper's membership is

comprised of individuals who reside in Mobile County, Alabama.  Many of these

residents live near Big Creek Lake, use the Mobile Area Water and Sewer System ("MAWSS") drinking water as their water source, and otherwise use and enjoy the Big Creek Lake – Hamilton Creek watershed and its surrounding areas. Baykeeper's members are thereby affected by Defendants' authorizations under NWP 12 for construction of the Pipeline.

7.     In addition to depending on Big Creek Lake for drinking water, Baykeeper's members have aesthetic, recreational, public health, business, and property interests in the wetlands, rivers, streams and other waterbodies in the Mobile area, as well as the areas in the immediate vicinity of those waterbodies that will be adversely impacted by this crude oil pipeline going forward under NWP 12.  Plaintiff and its members use, enjoy, and/or depend on the waterbodies affected by the Pipeline for wetland ecosystems, healthy forests, presence of wildlife and outdoor recreation, including nature study, bird watching, fishing, canoeing, hiking and a variety of other activities.  In addition, Baykeeper's members' business activities take place and depend on water from the Big Creek Lake – Hamilton Creek watershed.

8.     The Defendants' actions at issue in this case, which violate the Clean Water Act and the Administrative Procedure Act, would directly cause irreparable injury to the Plaintiff and its interests; this injury could be redressed by a favorable decision in this case.

4

**Defendants**

9.      Defendant United States Army Corps of Engineers is the federal agency charged with administering permits under § 404 of the CWA for the discharge of dredged or fill material into the waters of the United States.

10.      Defendant Lieutenant General Thomas P. Bostick is the Commanding General and Chief of Engineers of the U.S. Army Corps of Engineers.  He is charged with the supervision and management of all Corps decisions and actions, including the evaluation of Corps decisions and actions under § 404 of the CWA. Plaintiffs bring this action against Lieutenant General Bostick in his official capacity only.

11.      Defendant Colonel Jon J. Chytka is the District Engineer for the Mobile District office of the U.S. Army Corps of Engineers in Mobile, Alabama. Plaintiff brings this action against Colonel Chytka in his official capacity only. The Mobile District office is responsible for issuing CWA permits for discharges of dredged or fill material into waters of the United States in Mobile County and verified the Pipeline under NWP 12, which is the subject of this action.

**STATUTORY AND REGULATORY BACKGROUND**

**A.     The Clean Water Act**

12.      Congress enacted the CWA in order to "restore and maintain the chemical, physical, and biological integrity of the Nation's waters."  33 U.S.C. §

1251(a).  To accomplish this goal, the CWA prohibits the discharge of any

pollutant, including dredged spoil or other fill material, into navigable waters

unless authorized by a permit.  *Id.* § 1344.

13.     Unless exempted by § 404(f)(1) of the CWA, all discharges of

dredged or fill material into waters of the United States, including wetlands, must

be authorized under a § 404 permit administered by the Corps.  33 U.S.C. § 1344.

14.     The Corps is authorized to issue two types of permits under § 404:

individual permits and general permits.  33 U.S.C. § 1344(a)–(e).

15.     The Corps issues individual permits under § 404(a) on a case-by-case

basis.  33 U.S.C. § 1344(a).  Such permits are issued after a review involving,

among other things: site-specific documentation and analysis, public notice and

opportunity for a hearing, public interest review and a formal determination.  *Id*.;

33 C.F.R. § 322.3, pts. 323, 325.

16.     In contrast to individual permits, the Corps may allow activities to go

forward with minimal Corps involvement by issuing "general permits on a State,

regional, or nationwide basis . . . ."  33 U.S.C. § 1344(e).  Nationwide Permits are

one type of general permit and "are designed to regulate with little, if any, delay or

paperwork certain activities having minimal impacts."  33 C.F.R. § 330.1(b).

According to the Corps, NWPs are limited to "minor activities that are usually not

controversial and would result in little or no public or resource agency comment if

6

they were reviewed through the standard permit process."  67 Fed. Reg. 2020,

2022 (Jan. 15, 2002).

17.    Nationwide Permits, like other general permits issued by the Corps,

may be issued "for any category of activities involving the discharges of dredged

or fill material if the [Corps] determines that the activities in such category are

similar in nature, will cause only minimal adverse environmental effects when

performed separately, and will have only minimal cumulative adverse effect on the

environment."  33 U.S.C. § 1344(e)(1).  "No general permit . . . shall be for a

period of more than five years after the date of its issuance . . . ."  *Id*. § 1344(e)(2).

The Corps reissued all nationwide permits, including Nationwide Permit 12, in

February 2012.  77 Fed. Reg. 10,184 (Feb. 21, 2012).

18.    The Corps also issued a "Decision Document" for NWP 12 in

February 2012.  *See* U.S. Army Corps of Eng'rs, Decision Document, Nationwide

Permit 12 (Feb. 13, 2012), *available at*

www.usace.army.mil/Portals/2/docs/civilworks/nwp/2012/NWP_12_2012.pdf

[hereinafter Decision Document].

19.    Nationwide Permit 12 authorizes "utility line" activities as follows:

"Activities required for the construction, maintenance, repair, and removal of

utility lines and associated facilities in waters of the United States, provided the

activity does not result in the loss of greater than 1/2-acre of waters of the United

States for each single and complete project."  77 Fed. Reg. at 10,271.   The

definition of "utility lines" includes pipelines.  *Id.*

20.    For purposes of the NWPs, the Corps defines "waterbody" as "a

jurisdictional water of the United States.  If a jurisdictional wetland is adjacent . . .

to a waterbody determined to be a water of the United States under 33 CFR

328.3(a)(1)–(6), that waterbody and its adjacent wetlands are considered together

as a single aquatic unit."  77 Fed. Reg. at 10,290.

21.    NWP 12 requires a permittee to submit a pre-construction notification

("PCN") to the Corps' district engineer before commencing the activity if the

activity meets any one of seven criteria.  77 Fed. Reg. at 10,272.

22.    NWP 12 requires the Corps district offices to evaluate the cumulative

environmental effects overall of utility lines, including all "single and complete

projects" along the length of a linear project:

> In reviewing the PCN for the proposed activity, the district engineer will
>
> determine whether the activity authorized by the NWP will **result in more**
>
> **than minimal individual or cumulative adverse environmental effects or**
>
> **may be contrary to the public interest**.  For a linear project, this
>
> determination will include an evaluation of the individual crossings to
>
> **determine whether they individually satisfy the terms and conditions of**

**the NWP(s),** as well as the cumulative effects caused by all of the crossings

authorized by the NWP.

77 Fed. Reg. at 10,287 (emphasis added).  The district engineer will also consider

site specific factors when making this determination, "such as . . . the importance

of the aquatic resource functions to the region (e.g., watershed or ecoregion) . . . ."

*Id.*

      23.   "Single and complete linear project" is defined as follows:

The term "single and complete project" is defined as that portion of

the total linear project proposed or accomplished by one

owner/developer or partnership or other association of

owners/developers that includes all crossings of a single water of the

United States (i.e., a single waterbody) at a specific location.  For

linear projects crossing a single or multiple waterbodies several times

at separate and distant locations, each crossing is considered a single

and complete project for purposes of NWP authorization.  However,

individual channels in a braided stream or river, or individual arms of

a large, irregularly shaped wetland or lake, etc., are not separate

waterbodies, and crossings of such features cannot be considered separately.[1]

77 Fed. Reg. at 10,290.

24.    If a district engineer from the Corps "finds that the proposed activity would have more than minimal individual or cumulative net adverse effects on the environment or otherwise may be contrary to the public interest, he shall modify the NWP authorization to reduce or eliminate those adverse effects, or . . . instruct the prospective permittee to apply for a regional general permit or an individual permit."  33 C.F.R. § 330.1(d).  "A [district engineer] may assert discretionary authority by modifying, suspending, or revoking NWP authorization for a specific activity whenever he determines sufficient concerns for the environment or any other factor of the public interest so requires."  *Id.* § 330.4(e)(2).  In this event, "he must either modify the NWP authorization to reduce or eliminate the adverse impacts, or notify the prospective permittee that the proposed activity is not authorized by NWP and provide instructions on how to seek authorization under a regional general or individual permit."  *Id.*

---

[1] This definition applies to all Nationwide Permits, including NWP 12.  The Corps defines "single and complete project" differently for *non-linear* projects.  *See* 77 Fed. Reg. at 10,290.

25.     When the district engineer decides whether to assert his discretionary authority to modify, suspend or revoke NWP authorization for a specific activity, he should consider the following, "to the extent relevant and appropriate":

> Changes in circumstances relating to the authorized activity since the NWP itself was issued or since the [district engineer] confirmed authorization under the NWP by written verification; the continuing need for, or adequacy of, the specific conditions of the authorization; **any significant objections to the authorization not previously considered**; progress inspections of individual activities occurring under an NWP; cumulative adverse environmental effects resulting from activities occurring under the NWP; the extent of the permittee's compliance with the terms and conditions of the NWPs; revisions to applicable statutory or regulatory authorities; and, the extent to which asserting discretionary authority would adversely affect plans, investments, and actions the permittee has made or taken in reliance on the permit; and, other concerns for the environment, including the aquatic environment under the section 404(b)(1) Guidelines, and other relevant factors of the public interest.

33 C.F.R. § 330.5(d) (emphasis added).

26.     A NWP prospective permittee must satisfy all of the terms and conditions of the NWP in order for valid authorizations administered by the Corps

to occur.  "Some conditions identify a 'threshold' that, if met, requires additional

procedures or provisions" in the nationwide permitting program.  33 C.F.R. §

330.4(a).

27.     All nationwide permits are subject to general conditions, which are

issued in conjunction with the nationwide permits.  77 Fed. Reg. at 10,282.  When

the district engineer reviews a PCN for a proposed activity, he must determine,

among other things, whether the activity satisfies the general conditions of the

NWP.  *Id.* at 10,287.

28.     General Condition 7 (Water Supply Intakes) states that "[n]o activity

may occur in the proximity of a public water supply intake, except where the

activity is for the repair or improvement of public water supply intake structures or

adjacent bank stabilization."  77 Fed. Reg. at 10,283.  The Corps has not defined

the term "proximity" in the NWP regulations.  The Corps  has left "proximity" to

be determined on a case-by-case basis.  *See* 72 Fed. Reg. 11,092, 11,156 (Mar. 12,

2007).

29.     In addition to determining whether an activity satisfies General

Condition 7, the Corps must also consider the public interest when authorizing an

activity under NWP 12.  Decision Document at 28–34; *see also* 33 C.F.R. §

320.4(a)(1).  The public interest factors include concerns for water supplies and

conservation.  As the Corps NWP 12 Decision Document provides, "[a]ctivities

authorized by this NWP may adversely affect both surface and groundwater supplies . . . .  Division and district engineers can prohibit the use of this NWP in watersheds for public water supplies, if it is in the public interest to do so.  General Condition 7 prohibits discharges in the vicinity of public water supply intakes."  Decision Document at 32.

30.     In the public interest review, the Corps must weigh pubic interest in relation to factors that are relevant to each case: "Evaluation of the probable impact which the proposed activity may have on the public interest requires a careful weighing of all those factors which become relevant in each particular case."   33 C.F.R. § 320.4(a)(1).

**B.     The Administrative Procedure Act**

31.     The Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701–706, confers a right of judicial review on any person adversely affected by agency action.  *See* 5 U.S.C. § 702.

32.     The APA further provides that the reviewing court "shall . . . hold unlawful and set aside agency action, findings, and conclusions found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C. § 706(2)(A).

33.     The Corps' verifications of NWP 12 for a specific project are subject to judicial review under the APA.

## FACTS AND BACKGROUND

34.    The Mobile Area Water and Sewer System created Big Creek Lake in 1952.  Big Creek Lake, and the streams, creeks and groundwater which make-up its watershed, form the drinking water supply for the majority of Mobile County, including the Cities of Mobile, Prichard, Semmes, Saraland, Chickasaw, Spanish Fort and numerous other municipalities.  MAWSS distributes drinking water to approximately 200,000 customers throughout the area.

35.    Since 1952, MAWSS has purchased land in the Big Creek Lake – Hamilton Creek watershed to protect water quality.   MAWSS has attempted to limit development in the watershed and attempted to establish a protective buffer around the drinking water watershed.

36.    MAWSS's Palmer Gaillard Raw Water Pumping Station ("Pumping Station") is located on Big Creek Lake, near the area where Hamilton Creek empties into Big Creek Lake.

37.    On September 12, 2012, Plains Southcap L.L.C. sent a letter to the Regulatory Division, Department of the Army, Mobile District, U.S. Army Corps of Engineers requesting authorization to use NWP 12 to construct a 41-mile-long, 24-inch diameter crude oil pipeline starting at the Plains Ten-Mile Crude Oil Facility in Mobile, Alabama and extending southwest to the Chevron Pascagoula Refinery in Pascagoula, Mississippi, ending approximately one mile from the Gulf

14

of Mexico.  The Pipeline will be capable of transporting 150,000 to 200,000

barrels, or 6.3 to 8.4 million gallons, of crude oil per day.

38.     The Corps issued a letter dated January 18, 2013 ("AL Verification

Letter") finding that a Department of the Army permit was necessary for the

Project.  Based upon information, including drawings, provided by Plains to the

Corps, the Corps verified that the work to be performed by Plains was authorized

by NWP 12, Utility Line Activities, in accordance with 33 C.F.R. Part 330 of the

Corps regulations.

39.     The Corps' AL Verification Letter only concerned the Alabama

segment of the pipeline, approximately 18.63 miles of the proposed pipeline.  The

Corps assigned this segment of the pipeline the permit number SAM-2012-00885-

MBM.   The Corps later and separately authorized the Mississippi segment of the

pipeline on or about February 7, 2013 and assigned this segment of the pipeline the

permit number SAM-2012-01165-MBM.  The Mississippi segment of the pipeline

is approximately 22.37 miles.

40.     The Corps, in its AL Verification Letter, allowed fourteen (14)

separate NWP 12 verifications with twenty-two (22) stream crossings and 107

impacted wetland areas in the Alabama segment of the pipeline.  The Corps

concluded in this letter that "[a]ll impacts and crossings of a single water of the

United States at a specific location is considered a single and complete project"

and "[i]mpacts associated with each waterbody and adjacent wetland was verified as a single and complete project."  AL Verification Letter at 2.

41.     The Alabama segment of the Pipeline includes the following stream crossings: Hamilton Creek (8 crossings), Pierce Creek (5), Big Creek (4), Double Branch (1), Red Creek (1), Wolf Branch (2) and Seabury Creek (1).  Hamilton Creek is a major tributary to Big Creek Lake that enters Big Creek Lake near the Pumping Station.

42.     The Alabama segment of the Pipeline will impact 389 feet of stream bottoms, along with 40.42 acres of wetlands, including hardwood bottomlands that will be cleared, excavated and dredged, and which will eventually convert to lower-value wetlands.  AL Verification Letter at 1.

43.     The proposed route of the Alabama portion of the Pipeline includes a significant segment through the Big Creek Lake – Hamilton Creek watershed.  The Pipeline route is routed through the Big Creek Lake – Hamilton Creek watershed for approximately 4.45 miles.  Of these 4.45 miles, a significant portion of the Pipeline runs parallel to Hamilton Creek and the Pipeline crosses Hamilton Creek eight times.  The flow of Hamilton Creek in this area is southwest into Big Creek Lake, the same general direction of the proposed Pipeline.  The straight line distance from one of the Pipeline's eight crossings of Hamilton Creek to Big Creek Lake is approximately 3,500 feet.

16

44.     Based upon information and belief, as well as the record provided by the Corps, the Corps did not consider General Condition 7 and the proximity of the Pipeline to the public drinking water intake when making its determination to verify the Pipeline under NWP 12.

45.     Based upon information and belief, as well as the record provided by the Corps, the Corps did not consider the cumulative impacts or public interest concerns in protection of the watershed by authorizing this Pipeline in the drinking water watershed for Mobile and numerous other cities in Mobile County.

46.     Because the Corps verified the Pipeline under NWP 12, there was no public notice issued or an opportunity for public comment regarding the Corps' permitting of the Pipeline in the Big Creek Lake – Hamilton Creek watershed. There has been no public notice and no environmental study by the Corps or any other agency concerning this Pipeline.  As such, many of the Pipeline's environmental impacts remain undisclosed.

47.     Based upon information and belief, Plains Pipeline, LP, an affiliate of Plains Southcap, LLC, has had accidental releases of approximately 13,000 barrels of oil from its projects in the past seven years.

48.     Based upon information and belief, MAWSS has contested Plains' condemnation of MAWSS' land in the watershed to build this Pipeline, in part due to a concern for the drinking water supply.

17

49.     Based upon information and belief, Plains has not begun construction of the Pipeline in the Big Creek Lake – Hamilton Creek watershed on MAWSS property.

## CLAIMS FOR RELIEF

**Count One**: **The Corps' Verifications of NWP 12 for Plains' Pipeline Routed Through the Big Creek Lake – Hamilton Creek Watershed Violates the Clean Water Act, the Administrative Procedure Act and Applicable Regulations by Failing to Adequately Consider General Condition 7 (Water Supply Intakes) Required for All NWP Verifications.**

50.     Plaintiffs reallege, as if fully set forth herein, each and every allegation contained in the preceding paragraphs.

51.     Nationwide Permit General Condition 7 provides that the Corps cannot use NWP 12 to authorize a utility crossing through a water of the United States if that crossing is "in the proximity of a public water supply intake, except where the activity is for the repair or improvement of public water supply intake structures or adjacent bank stabilization."  77 Fed. Reg. at 10,283.

52.     The proposed Plains crude oil Pipeline route includes a crossing of Hamilton Creek that is approximately 3,500 linear feet from Big Creek Lake and within close proximity of a downstream MAWSS public water supply intake that serves approximately 200,000 people.

53.     No proposed stream or wetland crossing involves the "repair or improvement of public water supply intake structures or adjacent bank stabilization."  77 Fed. Reg. at 10,283.

54.     The proposed Plains crude oil Pipeline route also runs parallel along Hamilton Creek for significant portions of its 4.45 mile route through the Big Creek Lake – Hamilton Creek watershed.

55.     On or around January 18, 2013, the Mobile District of the Corps of Engineers notified Plains that construction of the Pipeline meets the terms and conditions of NWP 12 and that the Pipeline was authorized to proceed under NWP 12.

56.     Furthermore, in verifying the Plains Pipeline under NWP 12, the Corps never considered whether any of the stream and wetland crossings were within the proximity of water supply intakes even though the proposed Pipeline would cross directly through the Big Creek Lake – Hamilton Creek watershed that supplies Mobile County and numerous surrounding cities with drinking water.

57.      Because the Corps improperly authorized the Alabama section of the Plains Pipeline without accounting for, and in violation of, General Condition 7, it has violated the CWA § 404(e) and the decision is arbitrary and capricious, an abuse of discretion and contrary to law in violation of the APA.  Under the CWA, an individual § 404 permit is required for this Pipeline.

19

**Count Two: The Corps Violated the CWA and APA by Not Considering the Cumulative Impacts or Public Interest Associated with Routing the Plains Pipeline in the Drinking Water Supply Watershed of Mobile, Mobile County and other Surrounding Cities.**

58.     Plaintiffs reallege, as if fully set forth herein, each and every allegation contained in the preceding paragraphs.

59.     In reviewing a PCN, the Corps will determine if the activities authorized will result in more than minimal or cumulative adverse environmental effects or may be contrary to the public interest.

60.     In a public interest review, the Corps must weigh pubic interest in relation to factors that are relevant to each case.  33 C.F.R. §§ 320.4(a)(1), 330.5(d)(1).

61.     Division and district engineers can prohibit the use of NWP 12 in watersheds for public water supplies if it is in the public interest.  Decision Document at 32.

62.     The proposed Plains Pipeline route in the Alabama segment includes twenty-two (22) stream crossings with 107 impacted areas to wetlands.  Eight of these twenty-two stream crossings would occur at Hamilton Creek, which flows directly into Big Creek Lake.  Furthermore, a significant portion of the proposed

4.45 mile Pipeline route through the Big Creek Lake – Hamilton Creek watershed parallels Hamilton Creek and is in proximity of the drinking water supply.

63.     In its determination, the Corps never considered the cumulative impacts of the Plains Pipeline route in the drinking water watershed, nor did it consider whether routing a pipeline through a significant portion of the Mobile's drinking water watershed would be contrary to the public interest.  This lack of consideration by the Corps violated the CWA and is arbitrary, capricious, an abuse of discretion and contrary to law in violation of the APA.

**Count Three: The Corps' Authorization of NWP 12 for One or More Segments of the Plains' Pipeline, in Lieu of Issuing Individual Permits, Violates the APA.**

64.     Plaintiffs reallege, as if fully set forth herein, each and every allegation contained in the preceding paragraphs.

65.     The Corps' verifications of the Pipeline under NWP 12 is a final agency action for which there is no adequate remedy at law, therefore this matter is subject to judicial review under the APA, 5 U.S.C. § 704.

66.     In making this determination that the Pipeline could proceed under NWP 12, the Corps did not examine whether the Pipeline was within proximity of a water supply intake as required by General Condition 7.

21

67.     Furthermore, in making this determination that the Pipeline could proceed under NWP 12, the Corps did not consider the cumulative impacts of the Pipeline in the watershed, nor did it consider whether the routing of the Pipeline through the Big Creek Lake – Hamilton Creek watershed would be contrary to the public interest.

68.     Because the Corps never made this examination and because the Pipeline would run within the proximity of a water supply intake, the Corps has acted in a manner that is arbitrary and capricious, an abuse of discretion and not in accordance with law, and must be set aside under the APA.  5 U.S.C. § 706(2).

## **RELIEF**

Wherefore, Plaintiffs respectfully request this Court to grant the following relief:

a)     Declare the Corps' verifications of the Alabama segment of the Pipeline under NWP 12 null and void and in violation of the Clean Water Act and the Administrative Procedure Act;

b)     Vacate the Corps' verifications of the Pipeline under NWP 12 and issue injunctive relief enjoining Plains from conducting any activities in reliance on the Corps' verifications in the drinking water watershed of Big Creek Lake, including but not limited to any ground disturbance, excavation, dredging, filling, or other alterations of waters of the United States.

c)      Issue permanent and/or preliminary injunctions on construction and operation of the Plains Southcap crude oil Pipeline unless and until Defendants fully comply with the Clean Water Act and the APA.

d)      Award Plaintiff its costs, expenses and attorney fees under the Equal Access to Justice Act, 28 U.S.C. § 2412, and other applicable law; and

e)      Provide for such other relief as the Court deems just and appropriate.

Respectfully submitted this 24th day of January, 2014,

**s/Keith Johnston**
Keith Johnston
Alabama Bar No. ASB-0093-E68J
SOUTHERN ENVIRONMENTAL LAW
CENTER
2829 2nd Avenue South, Suite 282
Birmingham, AL 35233
Telephone: (205) 745-3060
Fax: (205) 745-3064
Email: kjohnston@selcal.org

Christina Andreen
Alabama Bar No. ASB-9696-D10R
SOUTHERN ENVIRONMENTAL LAW
CENTER
2829 2nd Avenue South, Suite 282
Birmingham, AL 35233
Telephone: (205) 745-3060
Fax: (205) 745-3064
Email: candreen@selcal.org

*Attorneys for Plaintiff*

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing "Complaint for Declaratory and Injunctive Relief" has been furnished by certified United States mail, first-class postage prepaid, to:

United States Army Corps of
Engineers
Headquarters
441 G Street NW
Washington, DC 20314

Lt. General Thomas P. Bostick
Commander and Chief of Engineers
United States Army Corps of Engineers
Headquarters
441 G Street NW
Washington, DC 20314

Col. Jon J. Chytka
Mobile District Commander
United States Army Corps of
Engineers
109 St. Joseph Street
Mobile, AL 36602

The Honorable Eric H. Holder, Jr.
Attorney General of the United States
U.S. Department of Justice
950 Pennsylvania Avenue, NW
Washington, DC 20530-0001

The Honorable Luther Strange
Attorney General
Office of the Attorney General
501 Washington Avenue
Montgomery, AL 36104

Kenyen R. Brown, U.S. Attorney
U.S. Attorney's Office for Southern
District
of Alabama
63 South Royal Street, Suite 600
Mobile, AL 36602

Respectfully submitted this 24th day of January, 2014,


                                        **s/Keith Johnston**
                                        Keith Johnston
                                        Counsel for Mobile Baykeeper