# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| MOBILE BAYKEEPER, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION 14-0032-WS-M |
| | ) |
| U.S. ARMY CORPS OF ENGINEERS, *et al.*, | ) |
| | ) |
| Defendants. | ) |

## ORDER

This matter comes before the Court on Baykeeper's Motion to Supplement the Administrative Record (doc. 32). The Motion has been briefed and is now ripe.

This action is one for judicial review of certain U.S. Army Corps of Engineers (the "Corps") verification decisions made pursuant to the Clean Water Act, 33 U.S.C. §§ 1251 *et seq.* ("CWA"). By way of background, the CWA authorizes the Secretary of the Army (acting through the Corps) to issue permits for discharge of dredged or fill material into navigable waters of the United States. 33 U.S.C. § 1344(a). In addition to individual permits, the Corps may issue "general permits on a … nationwide basis for any category of activities involving discharges of dredged or fill material if … the activities in such category are similar in nature, will cause only minimal adverse environmental effects when performed separately, and will have only minimal cumulative adverse effect on the environment." 33 U.S.C. § 1344(e)(1). Among the nationwide permits issued by the Corps under § 1344(e)(1) is Nationwide Permit 12 ("NWP 12"), which applies to certain activities required for construction of utility lines and associated facilities in United States waters. On January 18, 2013, the Corps granted intervenor-defendant Plains Southcap, Inc.'s request for verification that NWP 12 applies to discharges of dredged and fill material in connection with Plains Southcap's construction of a 41-mile oil pipeline (the "Pipeline") running through this judicial district.

Plaintiff, Mobile Baykeeper, Inc. ("Baykeeper"), brought this action seeking judicial review of the Corps' verification decisions relating to the Plains Southcap Pipeline project.

Count One of Baykeeper's Complaint alleges that "The Corps' Verifications of NWP 12 for Plains' Pipeline … Violate[] the Clean Water Act, the Administrative Procedure Act and Applicable Regulations by Failing to Adequately Consider General Condition 7 (Water Supply Intakes) Required for All NWP Verifications." (Doc. 1, at 18.) General Condition 7 limits the scope of NWP 12 verifications as follows: "No activity may occur in the proximity of a public water supply intake, except where the activity is for the repair or improvement of public water supply intake structures or adjacent bank stabilization." Reissuance of Nationwide Permits, 77 Fed. Reg. 10184, 10283 (Feb. 21, 2012). Thus, Baykeeper challenges the Corps' January 2013 verification decisions in favor of Plains Southcap's Pipeline project on the ground that NWP 12 verification was improper because of non-compliance with General Condition 7 (*i.e.*, "proximity" of the "activity" to a "public water supply intake").

In its timely Motion to Supplement the Administrative Record, Baykeeper proposes to add to the administrative record a map showing, *inter alia*, the relative locations of the Pipeline route in the Big Creek Lake watershed and the Mobile Area Water and Sewer System's S. Palmer Gaillard Water Pumping Station (a public water intake). In support of its request, Baykeeper alleges that the administrative record "does not contain a map showing the water intake in relation to the Pipeline, nor does the AR discuss the water intake. The location of the public water supply intake is a critical piece of evidence that the Corps failed to consider." (Doc. 32, at 4-5.) Baykeeper further reasons that unless the administrative record is supplemented with this map, "this Court is compromised in its ability to determine whether the Corps properly considered the water intake and General Condition 7 in its review of the NWP 12 verifications for the Pipeline." (*Id.* at 5.) Both the Corps Defendants (consisting of the Corps, Lt. General Thomas P. Bostick, and Col. Jon J. Chytka) and Plains Southcap oppose the proposed supplementation of the record.

The parties agree that Baykeeper's challenge to the Corps' verification decisions is governed by the Administrative Procedure Act, 5 U.S.C. §§ 701 *et seq.* ("APA"). Under the APA, "[t]he focal point for judicial review of an administrative agency's action should be the administrative record." *Alabama-Tombigbee Rivers Coalition v. Kempthorne*, 477 F.3d 1250, 1262 (11th Cir. 2007) (citation omitted); *see also Preserve Endangered Areas of Cobb's History, Inc. v. U.S. Army Corps of Engineers*, 87 F.3d 1242, 1246 (11th Cir. 1996) (explaining that the "task of the reviewing court is to apply the appropriate … standard of review … to the agency

decision based on the record the agency presents to the reviewing court") (citation omitted). "Though certain circumstances may justify the district court going beyond the administrative record, it is not generally empowered to do so." *Alabama-Tombigbee*, 477 F.3d at 1262; *see also Najjar v. Ashcroft*, 257 F.3d 1262, 1278 (11th Cir. 2001) ("the general rule, applicable across the board to judicial review of administrative action …, is that the court may not go outside the administrative record") (citation and internal quotation marks omitted).

That is not to say that supplementation of the administrative record is *per se* forbidden in the context of APA review. To the contrary, federal courts have recognized various exceptions that might properly allow a record to be expanded on judicial review. One such circumstance is that an agency record may be supplemented "if background information was needed to determine whether the agency considered all the relevant factors." *City of Dania Beach v. F.A.A.*, 628 F.3d 581, 590 (D.C. Cir. 2010) (citation and internal quotation marks omitted).[1] As a general proposition, "[t]he focus of judicial review of agency action remains the administrative record, which should be supplemented only if the existing record is insufficient to permit meaningful review consistent with the APA." *Axiom Resource Management, Inc. v. United States*, 564 F.3d 1374, 1381 (Fed. Cir. 2009); *see also National Mining Ass'n v. Jackson*, 856 F. Supp.2d 150, 157 (D.D.C. 2012) ("Ultimately, extra-record evidence will only be considered if it is needed to assist a court's review."). Exceptions to the baseline rule confining judicial review to the administrative record are both narrow and unusual. *See, e.g., Caez v. United States*, 815 F. Supp.2d 184, 192 (D.D.C. 2011) ("Courts ordinarily restrict their review to the administrative record under the APA. … As such, a party must show *unusual* circumstances to depart from this standard and supplement the record.") (citations omitted).

Baykeeper's argument for supplementation of the record to include the map depicting relative locations of the Pipeline and the public water intake is straightforward. As Baykeeper

---

[1] *See also Center for Biological Diversity v. Bureau of Land Management*, --- F. Supp.2d ----, 2014 WL 1347467 (N.D. Cal. Apr. 3, 2014) (judicial review may expand administrative record "if necessary to determine whether the agency has considered all relevant factors and has explained its decision") (citation omitted); *Black Dog Outfitters, Inc. v. Idaho Outfitters and Guides Licensing Bd.*, 873 F. Supp.2d 1290, 1298 (D. Idaho 2012) ("there are certain instances where it is necessary for the reviewing Court to go beyond the administrative record, in particular, to determine whether the agency considered all relevant factors") (citation omitted).

puts it, "One of the key issues in this case is whether the Pipeline is in proximity to the public water supply intake." (Doc. 36, at 2.) Without the map, Baykeeper argues, the Court will have no information to assess "proximity" or to determine whether it was arbitrary and capricious, in light of General Condition 7, for the Corps to issue verifications under NWP 12 to Plains Southcap. Baykeeper insists that the map is necessary to enable this Court to determine whether the Corps properly considered the water intake and General Condition 7, such that exclusion of the map will frustrate meaningful APA review.

In response, the Corps and Plains Southcap advance several arguments. First, they assert that the proffered map "does not meet the criteria for supplementation of the administrative record." (Doc. 34, at 1.) As discussed *supra*, however, supplementation of the administrative record has been permitted where background information is necessary to determine whether the agency considered all relevant factors. This Court cannot meaningfully ascertain whether the Corps properly weighed the "proximity" limitation of General Condition 7 in issuing the NWP 12 verifications unless the Court is furnished specific information depicting the spatial orientation of the Pipeline, the "activity," and the public water supply intake. Excluding that information from the record would impede meaningful judicial review of the General Condition 7 challenge that is a cornerstone of Baykeeper's Complaint. For that reason, the undersigned agrees with Baykeeper that, under the particular circumstances of this case, the map falls within the "unusual" parameters in which supplementation of the administrative record is permissible under the APA.[2]

---

[2] The objections of the Corps Defendants and Plains Southcap on this point appear to be rooted in semantics rather than substance. Indeed, both objectors effectively concede that it is appropriate for the Court to review information showing the relative geographic locations of the pipeline, the activity and the water supply intake, but maintain that this information should be conveyed via "demonstrative exhibit" rather than supplemental record. *See* doc. 34, at 1 ("the Corps does not object to use of the map as a demonstrative exhibit and does not oppose the Court taking judicial notice of the location of the … Pumping Station"); doc. 35, at 1-2 ("Plains is not necessarily opposed to the utilization of some map as a demonstrative exhibit to provide additional information to the Court concerning the area relevant to the challenged action"). It is not immediately clear (and the parties have not explained) why this nomenclature matters in the context of APA review of an agency decision. All parties agree that there will be no trial in this case; rather, this action will be resolved via cross-motions for summary judgment based on the administrative record. As such, there will be nothing admitted or not admitted into evidence. And the general rule confining judicial review of agency action to the administrative record does (Continued)

Second, defendants maintain that the map proposed by Baykeeper is inaccurate because the Pipeline design changed in material respects after this suit was filed in January 2014. (Doc. 34, at 3-7; doc. 35, at 3.) Baykeeper counters that the January 2013 verifications (and therefore the planned Pipeline design as of January 2013) are what matters in this case because "[t]he Corps has never withdrawn or modified the January 2013 verifications of NWP 12 and thus the January 2013 verifications stand as the final agency action" (doc. 36, at 4). This is neither the time nor the place to resolve any objection that Baykeeper's Complaint "is challenging the wrong Verification." (Doc. 35, at 3.)[3] For purposes of the Motion to Supplement, it suffices to observe that the Complaint unambiguously does challenge the January 2013 verifications, and that the proffered map purports to reflect background information regarding "proximity" that Baykeeper claims the Corps was required to consider at the time of those January 2013 verifications. Under these circumstances, defendants' objection to supplementation of the administrative record is not well-taken insofar as they argue that the Pipeline design later changed or the Corps issued subsequent verifications.

---

not appear to carve out exceptions for demonstrative exhibits, matters subject to judicial notice, and so on. Thus, the Corps' insistence that "the proffered map should not be admitted as evidence," but should instead be accessible to the Court "as a demonstrative exhibit," is puzzling because it appears to champion a distinction lacking meaningful legal or practical significance. The point is simple: All parties appear to recognize the potential need for the Court to look beyond the administrative record to evaluate Baykeeper's legal arguments relating to General Condition 7, yet the parties spar over whether the map ought to be called a supplement to the record, a demonstrative exhibit, or a matter for judicial notice. Whatever designation the document receives, the Court would still be going outside the administrative record. The Corps Defendants and Plains Southcap both seem to agree that it is appropriate for the Court to do so in this manner, yet they disagree with Baykeeper as to the label that should be affixed to that document, without explaining why that classification (*i.e.*, supplement to record, demonstrative exhibit, item for judicial notice) makes any difference.

[3] Of course, defendants are free to formulate merits-based legal argument(s) (*i.e.*, mootness, lack of Article III case or controversy, etc.) about how (if at all) subsequent project design changes and verifications might affect the legitimacy, viability, or justiciability of plaintiff's claims joined in this litigation, and to develop such arguments in their forthcoming summary judgment briefing. For purposes of this Order, the Court finds merely that such arguments are not probative as to the narrow procedural question presented by the Motion to Supplement.

Third, the Corps Defendants suggest that Baykeeper failed to comply with the requirement in the Order (doc. 31) entered on April 29, 2014 that any party wishing to supplement the administrative record must first "engage in good-faith negotiations with the other parties." (Doc. 34, at 7-8.) While the Court agrees with the Corps Defendants that further efforts to resolve this issue informally before Baykeeper filed its Motion might have been preferable, Baykeeper's pre-Motion communications with opposing counsel were not so deficient as to warrant summary denial of the Motion on that basis.

Fourth, Plains Southcap expresses a variety of concerns falling under the general rubric that "The Map as Tendered is Not Helpful to the Court." (Doc. 35, at 6.) In that regard, Plains Southcap asserts that the legend of the map is misleading, that certain labels on the map are misleading, that the map suffers from "cartographer errors," that the base-map is out of date or otherwise inaccurate, that the scale of the map is too small, and that the map is generally "loaded with extraneous matter." (*Id.* at 6-9.) Baykeeper counters that the map is accurate and that Plains Southcap's objections "do not concern the substance of the Map." (Doc. 36, at 5.) Based on the information before the Court at this time, it is not evident that the map suffers from any defects that are of any consequence to the narrow, specific, circumscribed purpose for which Baykeeper proposes that it be considered. Certainly, neither the Corps Defendants nor Plains Southcap have articulated any concern that the map suffers from defects rendering it unfairly prejudicial to them as to any legal or factual issue joined in this lawsuit. In short, none of the "clutter" and flaws identified by Plains Southcap appear to be of a type that would cause the map to be unhelpful to the Court for its specified purpose, or that would militate against including it in the record for the limited purpose articulated by Baykeeper.[4]

---

[4] That said, nothing herein limits or impairs the right of the Corps Defendants or Plains Southcap to argue in summary judgment briefs that the map is prejudicial or otherwise materially defective, misleading or inaccurate. Such arguments (if credited) may affect what aspects of the map are included in or excluded from the judicial review process. At this time, however, the Court has no reason to believe that any such arguments exist. Indeed, Plains Southcap points out that "this Map was offered by Baykeeper on the premise that it desired to show to the Court the distance between the Plains pipeline and the MAWSS water intake on Big Creek Lake." (Doc. 35, at 8-9.) No defendant has indicated that the map suffers from inaccuracies or defects with respect to that specific purpose. Any remaining "extraneous clutter" is just that, and should make no difference one way or the other to any party or to the Court's ultimate conclusions in its APA review of the Corps' decisions. Accordingly, no constructive
(Continued)

For all of the foregoing reasons, Baykeeper's Motion to Supplement the Administrative Record (doc. 32) is **granted**, and defendants' objections (docs. 34 & 35) are **overruled**. The Affidavit of Jovian Sackett and the map attached thereto as Exhibit A, both of which are appended to the Motion to Supplement (*see* docs. 32-1 & 32-2), will be considered part of the record for the limited purposes articulated by Baykeeper, subject to the caveats and limitations set forth *supra*.

DONE and ORDERED this 9th day of June, 2014.

s/ WILLIAM H. STEELE<br>
CHIEF UNITED STATES DISTRICT JUDGE

---

purpose would be served by dwelling on what is merely "extraneous clutter" here or in summary judgment briefing.